IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 4, 2006 Session

## STATE OF TENNESSEE v. KELLY MICHAEL PICKETT

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2002-C-1439      Steve Dozier, Judge**

**No. M2004-00732-SC-R11-CD - Filed on January 22, 2007**

AND

## STATE OF TENNESSEE v. GREGORY T. HARWOOD

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2003-B-843      Steve Dozier, Judge**

**No. M2004-01811-SC-R11-CO - Filed on January 22, 2007**

We granted the appeal in each of these cases to determine the constitutionality of Tennessee Code Annotated section 39-17-1003 (2003), which prohibits the possession of child pornography. Initially, the statute is neither unconstitutionally vague nor overbroad. Secondly, we hold that because the charges against Pickett were multiplicitous, only one conviction is permissible under the circumstances of that case. In consequence, the judgment of the Court of Criminal Appeals in each case is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgments of the Court of Criminal Appeals Affirmed**

GARY R. WADE, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., and ADOLPHO A. BIRCH, JR., SP. J., joined.

Mark C. Scruggs, Nashville, Tennessee, for the appellant, Kelly Michael Pickett.

Jodie A. Bell and Wendy S. Tucker, Nashville, Tennessee, for the appellant, Gregory T. Harwood.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Bernard McEvoy and Brian K. Holmgren, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual and Procedural Background

#### *State v. Pickett*

When police discovered images of nude children on his personal computer, Kelly Michael Pickett was indicted on eleven counts of sexual exploitation of a minor in violation of Tennessee Code Annotated section 39-17-1003 (2003).  Prior to trial, Pickett filed a motion to dismiss the entire indictment, alleging that Tennessee Code Annotated section 39-17-1003 was unconstitutional on its face.  In the alternative, he sought dismissal of ten of the counts on grounds of multiplicity.  The trial court ruled that the charges in the indictment were not multiplicitous.  As to Pickett's constitutional challenge, the trial court concluded that resolution of the issue was not "capable of determination without a trial of the general issue."  The case proceeded to trial without a jury some eleven months later.

The testimony established that in October of 1999, Pickett moved his personal computer to the residence of a friend, Allen Birney, who had Internet access.  Thereafter, Pickett visited the Birney residence regularly in order to use the computer.  On one occasion, Birney observed an "unusual" image on the screen while Pickett was using the computer.  He later accessed some files on the computer and discovered images depicting nude children, one of which was a representation of two young boys engaged in oral sex.  When Birney confronted Pickett, demanding that he either delete the images or remove the computer from the residence, Pickett claimed that the images had been e-mailed to him by a friend.

After being alerted that Pickett possessed child pornography, Detectives Robert Carrigan and Grant Carroll of the Metropolitan Nashville Police Department asked for and received permission from Pickett to search the computer.  They discovered numerous images of nude children stored in the computer's temporary Internet file.  Detective Carroll testified that he found images of both prepubescent and teenage girls in provocative poses.  Detective Carroll explained that when a user visits a website that contains images, the images are automatically stored in the temporary Internet file.

A more thorough search of Pickett's computer revealed even more stored images. Detective Stanley Mitchell of the Computer Forensics Laboratory of the police department testified that in

-2-

addition to those images contained in the temporary Internet file, there were more than one hundred images in the computer's unallocated space. Detective Mitchell explained that the images could have been placed in the computer's unallocated space when Pickett visited child pornography websites or when he downloaded and then deleted images from either the Internet, a diskette, or an e-mail. The officer explained that there was no way to conclusively determine how the images had been stored in the unallocated space.

Following the trial, the trial court upheld the constitutionality of Tennessee Code Annotated section 39-17-1003 and found Pickett guilty of eleven counts of sexual exploitation of a minor based upon eleven of the images recovered from his computer. On appeal, the Court of Criminal Appeals held that the statute was not unconstitutional but dismissed ten of the eleven convictions, concluding that the charges were multiplicitous.

### State v. Harwood

Because the appeal by Harwood is interlocutory, few facts were developed in the trial court. He was indicted for four counts of sexual exploitation of a minor in violation of Tennessee Code Annotated section 39-17-1003 (2003). Following the indictment, Harwood filed a motion to dismiss, challenging the constitutionality of Tennessee Code Annotated section 39-17-1003. The trial court rejected the claim, ruling that the statute was constitutional, but granted the request for this interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The Court of Criminal Appeals affirmed the ruling of the trial court.

## II. Analysis

### A. Constitutionality of Tennessee Code Annotated section 39-17-1003 (2003)

Both Pickett and Harwood assert that Tennessee Code Annotated section 39-17-1003 (2003) is unconstitutional on its face. Relying on the United States Supreme Court decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), each defendant contends that the statute is unconstitutionally vague and overbroad.

Initially, our courts are charged with upholding the constitutionality of statutes where possible. Dykes v. Hamilton County, 191 S.W.2d 155, 159 (Tenn. 1945); State v. Joyner, 759 S.W.2d 422, 425 (Tenn. Crim. App. 1987). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003) (citing State v. Robinson, 29 S.W.3d 476, 479-80 (Tenn. 2000); Riggs v. Burson, 941 S.W.2d 44, 51 (Tenn. 1997)). Moreover, this Court is required to "'indulge every presumption and resolve every doubt in favor of the statute's constitutionality.'" Id. (quoting State v. Taylor, 70 S.W.3d 717, 721 (Tenn. 2002)).

This Court's role when construing a statute is "'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'"

Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)).  "Legislative intent is determined 'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'"  Osborn v. Marr, 127 S.W.3d 737, 740 (Tenn. 2004) (quoting State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000)).  "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use."  Boarman v. Jaynes, 109 S.W.3d 286, 291 (Tenn. 2003) (citing State v. Nelson, 23 S.W.3d 270, 271 (Tenn. 2000)).

At the time of the offenses in these cases, Tennessee Code Annotated section 39-17-1003 provided as follows:

(a) It is unlawful for any person to knowingly possess material that includes a minor engaged in:
     (1) Sexual activity; or
     (2) Simulated sexual activity that is patently offensive.

(b) In a prosecution under this section, the trier of fact may infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor.

(c) A violation of this section is a Class E felony.

Tenn. Code Ann. § 39-17-1003 (2003) (emphasis added).[1]

---

[1]This version of the statute became law in 1990.  The statute was amended in 2005 and now provides as follows:

(a) It is unlawful for any person to knowingly possess material that includes a minor engaged in:

  (1) Sexual activity; or

  (2) Simulated sexual activity that is patently offensive.

(b) A person possessing material that violates subsection (a) may be charged in a separate count for each individual image, picture, drawing, photograph, motion picture film, videocassette tape, or other pictorial representation. Where the number of materials possessed is greater than fifty (50), the person may be charged in a single count to enhance the class of offense under subsection (d).

(c) In a prosecution under this section, the trier of fact may consider the title, text, visual representation, Internet history, physical development of the person depicted, expert medical testimony, expert computer forensic testimony, and any other relevant evidence, in determining whether a person knowingly possessed the material, or in determining whether the material or image otherwise represents or depicts that a participant is a minor.

(d) A violation of this section is a Class D felony; however, if the number of individual images,

(continued...)

-4-

In <u>Ashcroft v. Free Speech Coalition</u>, the United States Supreme Court ruled that the provision of the Child Pornography Prevention Act of 1996 that prohibited any visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct" was unconstitutional. <u>See</u> <u>Free Speech Coalition</u>, 535 U.S. at 258; <u>see also</u> 18 U.S.C. § 2256(8)(B) (1996).[2] Citing its earlier decisions in <u>Miller v. California</u>, 413 U.S. 15, 24 (1973) (defining obscenity, which is not constitutionally protected speech, as "works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value"), and <u>New York v. Ferber</u>, 458 U.S. 747, 764 (1982) (concluding that pornography which is created by using actual children is not constitutionally protected speech), the Court concluded that the statutory provision at issue was overbroad because it criminalized even those images that were not obscene and that did not involve the exploitation of actual children, such as computer-generated images or the use of adults that appear to be minors. <u>Id.</u> at 250-56.

Both Pickett and Harwood assert that Tennessee Code Annotated section 39-17-1003(b), which provides that "the trier of fact may infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor," abridges free speech because it encompasses images where no child exploitation was actually involved, such as computer-simulated or virtual images. The defendants also contend that subsection (b) impermissibly shifts the burden to the defendant to prove that the images do not portray actual minors. The State submits that subsection (b) does not prohibit constitutionally protected speech and that the inference contained in that section operates merely as an evidentiary device.

In each case, the Court of Criminal Appeals concluded that the statute is not overbroad. The intermediate court ruled that subsection (b) does not expand subsection (a) to include images that do not depict actual minors. The court also held that subsection (b) operates as an evidentiary device. In an unrelated case, however, a separate panel of the Court of Criminal Appeals questioned the constitutionality of the statute. In the consolidated cases of <u>State v. Butler</u> and <u>State v. Allen</u>, No. E2004-00359-CCA-R9-CD, 2005 Tenn. Crim. App. LEXIS 302 (Tenn. Crim. App. Mar. 30, 2005), the intermediate court held that subsection (b) is unconstitutional because it "comes too close

---

[1](...continued)

materials, or combination of images and materials, that are possessed is more than fifty (50), then the offense shall be a Class C felony. If the number of individual images, materials, or combination of images and materials, exceeds one hundred (100), the offense shall be a Class B felony.

(e) In a prosecution under this section, the state is not required to prove the actual identity or age of the minor.

Tenn. Code Ann. § 39-17-1003 (2006).

[2] Congress amended the Child Pornography Protection Act in 2003 to remove the offending language. <u>See</u> 18 U.S.C. § 2256 (2003).

to permitting a conviction based on the possession of material in which an actual minor is not involved, in violation of the holding in Free Speech Coalition." Id. at *17.

The constitutional test for overbreadth is whether the statute's language overreaches unlawful conduct and encompasses activity that is constitutionally protected. State v. Forbes, 918 S.W.2d 431, 448 (Tenn. Crim. App. 1995); see Grayned v. City of Rockford, 408 U.S. 104, 114 (1972). The United States Supreme Court has made the following observations regarding the doctrine of overbreadth:

> Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is "strong medicine" and have employed it with hesitation, and then "only as a last resort." We have, in consequence, insisted that the overbreadth involved be "substantial" before the statute involved will be invalidated on its face.

Ferber, 458 U.S. at 769 (citation and footnote omitted).

Under our principles of due process, an overbroad or vague statute is vulnerable to a constitutional challenge because it (1) fails to provide fair notice that certain activities are unlawful; and (2) fails to establish reasonably clear guidelines for law enforcement officials and courts, which, in turn, invites arbitrary and discriminatory enforcement. Forbes, 918 S.W.2d at 448 (citing Rose v. Locke, 423 U.S. 48, 49-50 (1975); Smith v. Goguen, 415 U.S. 566, 572-73 (1974)).

In our view, the plain language of subsection (a) of Tennessee Code Annotated section 39-17-1003 requires that the image be of "a minor." Tenn. Code Ann. § 39-17-1003(a) (2003). This language is markedly different from the statute at issue in Free Speech Coalition, which criminalized the possession of any sexually explicit image that "is, or appears to be" of a minor. See Free Speech Coal., 535 U.S. at 241-56 (emphasis added). In that case, the "appears to be" language rendered the statute unconstitutionally overbroad. Id. The Tennessee statute does not contain this language. Moreover, we are not persuaded that the language of subsection (b) expands the coverage of subsection (a) to include constitutionally protected speech. Subsection (b), which permits the trier of fact to infer that the image is of a minor, does not alter the requirement that the image be of "a minor." In consequence, it is our view that Tennessee Code Annotated section 39-17-1003(b) (2003), which can best be described as a permissive inference, is not unconstitutionally overbroad.

Further, it is our view that the statute does not impermissibly shift the burden to the defendant to prove that the image does not depict a minor. Both this Court and the United States Supreme Court have specifically approved of the use of permissive inferences in criminal trials. See, e.g., Estelle v. McGuire, 502 U.S. 62, 78-79 (1991); Lowe v. State, 805 S.W.2d 368, 371-72 (1991); State v. Bolin, 678 S.W.2d 40, 42 (Tenn. 1984). In Estelle, the United States Supreme Court held that "a permissive inference is not a violation of due process because the State still has the burden of persuading the jury that the suggested conclusion should be inferred based on the predicate facts

proved." Estelle, 502 U.S. at 79 (citing Ulster County Court v. Allen, 442 U.S. 140, 157-63 (1979)). A "permissive inference allows, but does not require, the triers of fact to infer the elemental fact from proof by the State of the basic fact and places no burden of any kind on the defendant." Bolin, 678 S.W.2d at 42.

Conversely, a mandatory presumption violates due process because it shifts the burden to the defendant. Patterson v. New York, 432 U.S. 197, 215 (1977). "The mandatory presumption tells the triers of fact that they must find the elemental fact upon proof of the basic fact unless [the] defendant comes forward with some evidence to rebut the presumed connection between the two facts." Bolin, 678 S.W.2d at 42.

In this instance, Tennessee Code Annotated section 39-17-1003(b) provides that "the trier of fact may infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor." Tenn. Code Ann. § 39-17-1003(b) (2003) (emphasis added). The statute does not require the trier of fact to conclude that the material depicts a minor. Further, the statute places no burden on the defendant to prove that the image is not that of a minor. The State must still establish each of the elements of the crime, including the fact that the material contains the image of a minor. It is our view, therefore, that the statute does not unconstitutionally shift the burden of proof.

The defendant Harwood also asserts that the definition of the term "material," as it appears in the statute, is unconstitutionally overbroad. Tennessee Code Annotated section 39-17-1002(2) (2003) defines "material" as follows:

> (A) Any picture, drawing, photograph, motion picture film, videocassette tape or other pictorial representation;
>
> (B) Any statue, figure, theatrical production or electrical reproduction; or
>
> (C) Any text or image stored on a computer hard drive, a computer disk of any type, or any other medium designed to store information for later retrieval; . . . .

Tenn. Code Ann. § 39-17-1002(2) (A)-(C) (2003). Harwood contends that this language is overbroad because there is no requirement that the material be obscene as defined in Miller. See Miller, 413 U.S. at 24. This argument, however, overlooks the fact that in order to constitute a criminal act under section 39-17-1003, possession of any of the above must include a minor engaged in sexual activity. See Tenn. Code Ann. § 39-17-1003(a) (2003). The United States Supreme Court held in Ferber that the Miller test does not apply to child pornography, which is not constitutionally protected speech. See Ferber, 458 U.S. at 756. Tennessee Code Annotated section 39-17-1003 does not criminalize the possession of materials that do not contain actual minors. Because our statute requires proof that the materials depict actual minors, it is not subject to the Miller test.

Finally, the defendants assert that the statute is unconstitutionally vague because it does not define the word "possess." While maintaining that the term "possess" provides too much discretion in the application of the law, Pickett and Harwood argue that the statute would permit the prosecution of otherwise innocent individuals who, by mere chance, happen upon child pornography.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned, 408 U.S. at 108. "A criminal statute that forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Leech v. Am. Booksellers Ass'n, 582 S.W.2d 738, 746 (Tenn. 1979) (citing U.S. Const. amend. XIV, § 1 ("[N]or shall any state deprive any person of life, liberty, or property, without due process of law; . . . ."); Tenn. Const. art. I, § 8 ("[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.")). The fair warning requirement embodied in the due process clause prohibits the states from holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617 (1954) (footnote omitted). Due process requires that the law give sufficient warning so that people may avoid conduct which is forbidden. Rose, 423 U.S. at 50. "Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.'" Id. at 49-50 (quoting Robinson v. United States, 324 U.S. 282, 286 (1945)). The constitutional test for vagueness is whether a statute's "prohibitions are not clearly defined and are susceptible to different interpretations as to what conduct is actually proscribed." Forbes, 918 S.W.2d at 447-48 (citing Grayned, 408 U.S. at 108; Baggett v. Bullitt, 377 U.S. 360, 367 (1964)).

This Court must employ the natural and ordinary meaning of the words in the statute to give effect to the legislative intent. Here, the statute makes it a crime to "possess material that includes a minor engaged in . . . [s]exual activity; or . . . [s]imulated sexual activity that is patently offensive." Tenn. Code Ann. § 39-17-1003(a) (2003). Black's Law Dictionary defines the term "possess" as "[t]o have in one's actual control; to have possession of." Black's Law Dictionary 1201 (8th ed. 2004). "Possession" is defined as "[t]he fact of having or holding property in one's power; the exercise of dominion over property." Id. Moreover, as the Court of Criminal Appeals observed, the term "possess" is modified by the term "knowingly." "'Knowing' means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-106(20) (2006). Because the possession contemplated by the statute must be "knowing," a person who inadvertently stumbles upon child pornography would not be guilty of a crime under the terms of the statute. Because the prohibited conduct is clearly defined, the act is not unconstitutionally vague. See Forbes, 918 S.W.2d at 447-48.

*II. Multiplicity*

The State contends in this appeal that the Court of Criminal Appeals erred by ruling that ten of Pickett's eleven convictions for sexual exploitation of a minor were multiplicitous. We disagree.

The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, article 1, section 10 of the Tennessee Constitution provides that "no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. 1, § 10. This Court has observed that "three fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (citations and footnote omitted). In Denton, we observed that "whether two offenses are the 'same' for double jeopardy purposes depends upon a 'close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances.'" Id. at 379 (quoting State v. Black, 524 S.W.2d 913, 919 (Tenn. 1975)). Finally, this Court noted that while appellate review must be guided by the test announced in Blockburger v. United States, 284 U.S. 299, 304 (1932), that test is not conclusive of legislative intent and the reviewing court must also examine (1) whether there were multiple victims involved; (2) whether several discrete acts were involved; and (3) whether the evil at which each offense is directed is the same or different. Denton, 938 S.W.2d at 380-81.

In State v. Phillips, this Court explained the doctrine of multiplicity:

Multiplicity concerns the division of conduct into discrete offenses, creating several offenses out of a single offense. Several general principles determine whether offenses are "stacked" so as to be multiplicitous:

1. A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;

2. If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and

3. Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996) (footnotes omitted). "Additional factors such as the nature of the act; the time elapsed between the alleged conduct; the intent of the accused, i.e., was a new intent formed; and cumulative punishment may be considered for guidance in determining whether the multiple convictions violate double jeopardy." State v. Epps, 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998) (citing Phillips, 924 S.W.2d at 665).

In this case, the Court of Criminal Appeals concluded that ten of the eleven counts against Pickett were multiplicitous. That court reasoned that because "the State presented no evidence

concerning which pictures came from which website or when [Pickett] accessed each picture," the evidence established only one crime.

The proof at Pickett's trial established that numerous images were stored in either the temporary Internet file or the unallocated space of Pickett's personal computer. Detective Mitchell testified that he was unable to determine when the defendant had accessed the images or from which websites the images had come. Based upon that testimony, the Court of Criminal Appeals concluded that "all of the pictures could have come from a single website and could have been automatically downloaded onto the appellant's hard drive simultaneously." The State did not otherwise attempt to distinguish the offenses by showing that the crimes were separated by time or location or by otherwise demonstrating that Pickett formed a new intent as to each image. See Epps, 989 S.W.2d at 745. Further, the State has not established that our legislature intended cumulative punishment. By the application of controlling precedent, it is our view that the evidence established only one offense and that the charges against Pickett were, therefore, multiplicitous.

### Conclusion

We hold that Tennessee Code Annotated section 39-17-1003 (2003) is not vague or overbroad in violation of the state or federal constitutions. We also hold that the charges against the defendant Pickett were multiplicitous and that the evidence supports only one conviction. Thus, we affirm the judgments of the Court of Criminal Appeals in each case.

It appearing that the defendant, Kelly Michael Pickett, is indigent, the costs of the appeal in his case are taxed to the State of Tennessee. In the defendant Harwood's appeal, the costs of the appeal are taxed to the defendant, Gregory T. Harwood and his surety, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE

-10-